### GESSNER v. PHILIPS et al.

(Circuit Court, S. D. New York. February 14, 1894.)

1. PATENTS—TESTS OF INFRINGEMENT.
   Devices which are not equivalents of those patented, and could not be substituted therefor without the exercise of invention, do not infringe.

2. SAME.
   Infringement cannot be safely determined by comparing the two machines, without regard to the claims of the patent.

3. SAME.
   Where the spirit of an invention is taken, infringement is not avoided by carrying the invention further than the patentee did.

4. SAME—PARTICULAR PATENTS—CLOTH-PRESSING MACHINES.
   The following patents to David Gessner for improvements in cloth-pressing machines explained and construed as to the claims mentioned,

and No. 387,290 *held* not infringed as to claim 10; No. 387,292, *held* valid and infringed as to claims 3 and 10; No. 387,297, *held* not infringed as to claim 1, and infringed as to claim 2; No. 424,971, *held* not infringed as to claims 1, 4, and 11 to 16, and void as to claim 2, because previously patented to the same inventor.

This was a suit in equity by David Gessner against F. Stanhope Philips and others for infringement of certain patents granted to complainant for improvements in cloth-pressing machines.

Livingston Gifford, for orator.

Cansten Browne, for defendant.

WHEELER, District Judge. The questions involved here arise upon four patents for improvements in cloth-pressing machines granted to the orator, and alleged to have been infringed by the defendants, in using a machine subsequently patented to George W. Voelker. Cloth is finished in these machines by being fed between hot surfaces, one having a smooth jacket, under great pressure. The machines of the kind in use in this particular art next before the invention of the first three of these patents were one invented by Ernst Gessner, of Saxony, father of the orator, patented by No. 4,913, in England, December 27, 1877, in which the cloth was passed between a cylinder and two bedplates, one on each side, connected by a continuous jacket below the cylinder, and mounted on supports connected above by pig-tail springs, and screws drawing them towards the cylinder for pressure, which could not be wholly relieved from pressure without wedging them apart; and machines patented in two patents to George W. Miller (No. 257,-508, dated May 9, 1882, and No. 352,253, applied for January 6, 1885, and dated November 9, 1886), in which the cloth was passed between cylinders and bedplates below, pressed together by compound levers. In those machines, when stopped in use, the pressing surfaces could not be readily separated, to prevent press marks on the cloth from the hot surfaces, nor for access to keep these parts in order. These inventions were made to relieve those difficulties, and to increase the capacity and efficiency of the machines. The improvements consist largely in mounting the cylinder in fixed bearings on the frame of the machine, and a bedplate on each side in movable bearings sliding on guide ways on the frame towards and from the cylinder; and in mechanism for moving and securing the bedplates evenly in relation to the cylinder for adjustment, pressure, and access. The patents and claims in question are No. 387,290, claim 10, which is for:

"In combination, the cylinder, pressing devices co-operating therewith, a lever at each end of the cylinder for operating the pressing devices, toggle joints adjacent to said levers, and connected therewith, one of the links of each of said toggle joints being provided with a screw-threaded rod, substantially as described, whereby the pressure exerted by the toggle joints may be equalized, and means for operating said toggle joints."

No. 387,292, claim 3, which is for:

"In a cloth-pressing machine, in combination, a frame having fixed bearings for the cylinder, and guide ways for the bearings of the bedplates ar-

ranged on opposite sides of said cylinder bearings, the cylinder, and the bed-plates arranged on opposite sides of the cylinder, and each bedplate being provided with bearings arranged to slide in said guide ways, whereby the bedplates may reciprocate to and from the cylinder, substantially as described."

And claim 10, which is for:

"In combination, the feed rollers, the cylinder having fixed bearings, the two bedplates, mechanical means for exerting and relieving pressure on the bedplates, and supports for the bearings of the bedplates, movable relatively to and independently of the bearings of the cylinder and feed rollers, whereby the bedplates may be moved back from the cylinder without disturbing the position or operation of the cylinder or feed rollers, substantially as described."

And No. 387,297, claim 1, which is for:

"In a cloth-pressing machine, the combination, with the bedplate and the cylinder and the sheet-metal jacket, of means, substantially as described, whereby the ends of the sheet-metal jacket are secured to the bedplate, and the margins thereof are prevented from springing into contact with the cylinder, as set forth."

And claim 2, which is for:

"In combination with the cylinder and the bedplate, a sheet-metal jacket secured at one edge to the bedplate, and extending between the bedplate and the cylinder, and the clamp overlapping the opposite edge of the sheet-metal jacket, and holding it in place, substantially as described."

All of which are dated August 7, 1888.

The Voelker machine, used by the defendants, has, on a frame of two ends connected together, a cylinder, in raised, fixed bearings, driven by a gear wheel; bedplates in bearings sliding on guide ways back of the frame, on each side of, and towards and from, the cylinder, movable by levers at each end pivoted on nuts connected by a threaded rod below the cylinder, with their short arms connected to the bearings, and their long arms connected below by toggle joints operated by cams to move the levers, and produce powerful pressure on the bedplates equalized by a rod between the cams, and thereby dispensing with connections between the bedplates; and feed rollers mounted on the frame, out of the way of the motion of the bedplates. The questions made arise principally upon the construction of the claims with reference to infringement.

The lever of claim 10, No. 387,290, is pivoted on the shaft at each end of the cylinder, and has two short arms each attached to trunnions on the ends of the bedplates, and a long arm, connected by toggle joints to the frame below, which, when moved downwards by the operation of the toggle joints, produces, by moving the short arms, powerful pressure of the bedplates towards the cylinder, which is equalized between the ends by a screw-threaded rod in one of the links of each of the toggle joints. The combination of this claim includes a lever at each end of the cylinder for operating the pressing devices, and toggle joints having one link each provided with a screw-threaded rod for equalizing their exertion of pressure. The machine used by the defendants has all the other elements of the

combination, but no lever at or connected with either end of the cylinder, or with the cylinder anywhere, or link of a toggle joint provided with a screw-threaded rod for equalizing exertion of pressure, or other purpose. The two levers of this machine, with their connections, toggle joints, and cam movements, could not be substituted for the three-armed lever, its connections, toggle joints, and screw-threaded rod movement, without invention of respectable, if not high, order. They do the same things, but not in substantially the same way, and do not appear to be equivalents in this combination, or, with the other elements, to infringe this claim. Eames v. Godfrey, 1 Wall. 78.

Claim 3 of No. 387,292 is spoken of for the defendants as if it took in the means whereby the bedplates are made to reciprocate to and from the cylinder as an element of the combination, and that defendants' machine does not have such a combination. But such means do not appear to be so mentioned. Under the "whereby" appears to be stated an advantage, not an element, of the combination. The defendants' machine appears to have what are included as elements of the combination producing that advantage.

Claim 10 of the same patent leaves out of the combination the frame, as such, and the specific arrangement of the bearings of the bedplates on opposite sides of the cylinder, and brings in mechanical means for pressure, and supports for the bearings of the bedplates, movable relatively to, and independently of, the bearings of the cylinder and feed rollers. The effect of this combination is stated to be that the bedplates may be moved back from the cylinder without disturbing the position and operation of that, or of the feed rollers. Reference is made, against this claim, to prior patents, showing feed rollers mounted on stationary parts of the machine, and to the Ernst Gessner machine, as anticipations showing want of invention. The movement of the bedplates from the cylinder, in the sense of this claim, seems to be such as would wholly free them from the effect of each other. The bedplates of the Ernst Gessner machine do not appear capable of such movement back from the cylinder. When wedged apart, the operation of the cylinder would be seriously disturbed. If the use of feed rollers so mounted was old, the bringing them into this new combination would be producing a new combination, and not merely making a new use of an old device.

Claim 1 of No. 387,297 is for means for securing the ends of the sheet-metal jacket to the bedplates, and preventing them from springing against the cylinder when narrow cloth, not reaching to the ends of the jacket to hold them down, is being pressed. In the machine used by the defendants the ends of the jackets, from their form, in two arcs, need not be, and are not, secured to the bedplates, any more than their interior parts are; and no means are used for securing the ends of the jackets, as such, to the bedplates. This claim, therefore, does not seem to be infringed.

Claim 2 of this patent is, in substance, for a clamp over one edge of the jacket, permitting easy removal, in place of a bend over the

edge of the bedplate, preventing it. In the machine used by defendants, both edges appear to be secured by such a clamp, permitting the same thing. By this the spirit of the invention of this claim seems to have been taken, and carried further. This extension of it does not cure the infringement in taking it.

In the machine of the fourth patent, No. 424,971, which is dated April 8, 1890, the bearings of the bedplates rest on guide ways below, and preferably descending from, the bearings of the cylinder, and are movable by hand wheels connected with nuts on opposite threaded screws in toggle joints, one on each side, between the bedplate and a projection on the frame, and having sprocket wheels, to be connected by a sprocket chain, for moving the bedplates in unison. In the machine used by the defendants, the bearings of the bedplates are movable by levers pivoted on nuts connected under the end of the cylinder by an opposite threaded screw turned by a hand wheel, and worked by a cam on toggle joints between their long arms below. Turning the screw one way or the other moves the upper ends of the levers, and by them the bedplates towards or from the cylinder; and moving the cam on the toggle joints, one way or the other, moves the long arms of the levers to or from each other, and thereby moves the upper ends of the levers, and by them the bedplates further towards or from the cylinder. These connections between the bedplates do not interfere with the removal of the cylinder, and this arrangement leaves a third side of the cylinder open for its removal laterally. The claims of this patent alleged to be infringed are the first, second, fourth, and eleventh to sixteenth. The first is for:

"In a rotary cloth-pressing machine, in combination, a cylinder, stationary bearings therefor rigidly secured to the frame, and the following parts arranged upon two sides of the cylinder, leaving a third side for the lateral removal of the cylinder, viz. two bedplates arranged on opposite sides of the cylinder, and an independent power-imparting mechanism, substantially as described, for each bedplate, each of said power-imparting mechanisms abutting at its rear end against the frame, whereby connections between the bedplates interfering with the removal of the cylinder may be dispensed with."

The power-imparting mechanism for the bedplates of the machine used by defendants is connected by a screw between the nuts at the ends of the short arms, and a toggle joint between the long arms, of the levers. If the screw or the toggle joints should break or be removed, it would not work at all, or, if the toggle joints should be disconnected on either side, it is not adapted to work on the other, and is not shown to have been used so. The strain of the mechanism is not borne at all by the frame, but by the screw; and the mechanism rather holds itself together, than abuts against anything; but, if anything on each side, it is the nut on the screw, or, if all together, it is the screw. Each of these is a part of the mechanism, and not of the frame. As these things are understood, that machine has not power-imparting mechanism adapted to be independent, or so used, nor such mechanism abutting at its rear end, or otherwise, against the frame, nor anything answering these de-

scriptions. Therefore, it does not appear to have the combination of this claim, or in any way to infringe it.

The second claim is for:

"In a rotary cloth-pressing machine, in combination, a cylinder having its bearings in the frame, whereby it is supported independently of the bedplates, and the following parts arranged on two sides of the cylinder, leaving a third side for the lateral removal of the cylinder, viz. two bedplates arranged on opposite sides of the cylinder, and provided with carriages for moving on the slides, and slides in the frame supporting each bedplate, whereby the bedplates may be slid to and from the cylinder, on the frame, without affecting the support of the cylinder, substantially as described."

The only difference between this claim and the third claim of No. 387,292, on its face, is that here the bearings of the cylinder are to support it independently of the bedplate. That patent, however, shows bearings of the cylinder so supporting it, and that difference disappears. The orator could not have a second patent for the same thing. James v. Campbell, 104 U. S. 356.

The fourth claim is for:

"In a rotary cloth-pressing machine, in combination, a cylinder, means for driving the same, and means for supporting the same independently of the bedplate, two bedplates, one arranged on each side of the cylinder, and supporting and power-imparting mechanism, whereby the bedplates are supported and actuated, said supporting and power-imparting mechanism being arranged wholly out of the path of removal of the cylinder, whereby the cylinder may be removed without either dismounting the bedplates or disconnecting their actuating mechanism, substantially as described."

The power-imparting mechanism of this claim seems to be required to be so arranged that the cylinder can be removed without disconnecting it. This mechanism of the machine used by the defendants does not appear to be so arranged for use, or so used, and it does not appear to have the combination of, or to infringe, this claim.

The eleventh and twelfth claims are for combinations of the parts of those mentioned and some others; and, in the eleventh, "all said parts being arranged on two sides of the cylinder, whereby the cylinder may be removed laterally to a third side"; and, in the twelfth, all being arranged on three sides of the axial line of the cylinder, whereby it "may be removed laterally to the fourth side." The arrangement of these parts in the machine used by the defendants does not appear to answer this description as to the removal of the cylinder, and therefore the machine does not appear to infringe these claims.

The thirteenth and fourteenth claims are for combinations including "an actuating mechanism interposed between each bedplate, and stops on the frame." As shown with reference to the first claim, the machine used by the defendants does not have such actuating mechanism so interposed, and so does not appear to have the combination of, or to infringe, either of these claims.

The fifteenth and sixteenth claims are for combinations of such parts like those of the fourth, arranged so that the cylinder may be removed. The machine used by the defendants does not more appear to infringe these claims than that.

Upon these conclusions, the orator appears to be entitled, in this case, to a decree establishing the validity of claims 3 and 10 of No. 387,292, and claim 2 of No. 387,297, and to no more. This may not cover all that he invented which the defendants use; but infringement cannot be safely determined, by comparing a patented machine with an infringing machine, without comparing the infringing machine with the claims of the patents. When the machine used by the defendants is compared with the claims, this seems to cover all that the orator invented and claimed in these patents, which the defendants use; and the patents cannot be extended beyond the bounds of the claims to cover anything outside, however meritoriously it may have been invented. Decree for orator on claims 3 and 10 of No. 387,292, and 2 of No. 386,297.

---

## On Rehearing.

### (May 22, 1894.)

WHEELER, District Judge. This cause has been further heard upon a petition for rehearing as to the validity of claim 2 of the patent No. 424,971, as compared with claim 3 of No. 387,292, and for a decree that it is valid, upon the filing of a disclaimer limiting it to a combination with guide ways always supporting the bedplates; and for a rehearing as to the infringement of claims 11, 12, 13, and 14 of that patent, and also claim 16 of No. 469,372 by the toggle mechanism moving the bedplates of the defendant's machine.

The guide ways of claim 3 of No. 387,292 would always support the bedplates if the latter were located one on each side of, and horizontally, or nearly so, with, the cylinder, as in 424,971, instead of vertically above and below it. Nothing in the claim itself requires them to be located vertically, and the specification merely says, as to this, at line 84, that they "are preferably arranged one above and the other below the cylinder, as shown in the drawings." The bedplates and cylinder operate in respect to each other precisely the same in either way; and the guide ways guide the bedplates to and from the cylinder in the same manner, but supporting their weight wholly or in part when they are horizontal to the cylinder, or nearly so, and without supporting it when they are vertical. The guide ways, as supports to the cylinder, do not appear to constitute any material part of the invention of claim 2 of 424,971. These claims, as again compared, therefore, appear to be for combinations of the same elements operating in substantially the same way in respect to each other, although they are operated by different means, not the subject of this, but of other claims. This seems to be fatal to the validity of this claim 2 as it is, and would seem to be equally so if the claim should be limited by disclaimer as proposed. Miller v. Manufacturing Co., 151 U. S. 186, 14 Sup. Ct. 310.

Each toggle mechanism of each bedplate of the machines of the plaintiff's patents abuts against what is sometimes called

a "bracket," and sometimes a "stop," on each side of each frame, for support of the pressure by the toggle mechanism against the bedplates. The toggle mechanism of the bedplates of the defendants' machine opposite to each other, as before described, abut against each other for support in operating between the long arms of two levers moving them, and thereby the short arms, carrying the bedplates to and from the cylinder. A stud on the frame steadies the action of the mechanism, producing simultaneous movement on each side, which friction or other slight obstruction might prevent; but this stud does not appear to take the place of the bracket or stop of the patent in supporting the pressure of the bedplate against the cylinder, but rather that of the sprocket wheel and chain of the patent, which produce simultaneousness in movement of the bedplates. This re-examination of these parts of the case leads to the same conclusions reached before, and leaves no ground for granting the motion, which must therefore be denied. Motion denied.